**JIAN LI ZHENG, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–3927.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) March 10, 2010.

Opinion Filed: March 17, 2010.

Vincent S. Wong, Esq., New York, NY, for Petitioner.

Steven F. Day, Esq., Aimee J. Frederickson, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Respondent.

Before: SCIRICA, Chief Judge, SMITH and WEIS, Circuit Judges.

OPINION

PER CURIAM.

Jian Li Zheng has filed a petition for review of the final order by the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ"'s) denial of Zheng's requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

The parties are familiar with the background of this case, and so we provide only a summary of the proceedings. Zheng is a native and citizen of the People's Republic of China who arrived in the United States in December 2005. She was placed in removal proceedings as an arriving alien without a valid entry document (8 U.S.C. § 1182(a)(7)(A)(i)(I)). She conceded removability and applied for asylum, withholding of removal, and CAT relief as a Falun Gong practitioner. The IJ held an evidentiary hearing on Zheng's claims on December 21, 2006.

Zheng testified about her involvement with Falun Gong. Zheng stated that she often had been ill with throat infections and fever, and she had a growth or lump in her throat, as diagnosed by a doctor in China. She later described her condition as a "big membrane of cells" near her mouth. A friend with similar health afflictions introduced her to the practice of Falun Gong. Zheng began her practice in 2003, and her throat condition improved. Zheng stated that she used to practice Falun Gong every day, either at her home or at her friend's house. While at her friend's house in November 2004, her parents telephoned to tell her that the police had searched their home looking for her because of her Falun Gong activities. Zheng did not return home and instead went to live with her grandaunt, who lived about two hours away. She testified that in January 2005, the police came to her grandaunt's home while Zheng was outside, gathering flowers on the mountain near her grandaunt's home. She saw the police cars and remained out of view until they departed. Her grandaunt later told Zheng that the police had accused her of violating the law by practicing Falun Gong. Zheng then went to stay at another friend's house, and then she arranged to come to the United States. Zheng stated that the police continued to visit her home about once a week during this period and that her parents were threatened with arrest if she did not surrender. She fears returning to China because she would be arrested for her Falun Gong practice and for illegally fleeing the country. Zheng submitted supporting documentation, including identity documents and a letter from her father.

On cross-examination, Zheng stated that she was not certain about how often the police visited her parents' home to look for her, but she affirmed that her parents have not been arrested despite that threatened outcome. When asked why she had testified that the police came to look for her at her grandaunt's house in January 2005 when her written statement indicated that the event occurred in May 2005, Zheng changed her testimony, affirming that the date was May 2005. As further explanation, she stated that the interpreter was speaking too quickly. The IJ explored whether there possibly could have been a misunderstanding or interchangeability of the Chinese words for "January" and "May," and whether the interpreter heard "May" but interpreted "January"; the IJ observed that the words in Chinese were completely different in sound. Ultimately, in attempting to clarify her testimony concerning the relevant date, Zheng explained that she had testified regarding her arrival at her grandaunt's house in November 2004 and the events that followed, then stated, "I don't know if I said November and January and got confused." (A.R. 108.)

The IJ found that Zheng lacked credibility, denied all forms of relief, and ordered removal to China. On August 25, 2008, the BIA dismissed the appeal. The BIA found no clear error in the IJ's adverse credibility determination, citing Zheng's unpersuasive testimony regarding her medical condition, how authorities first discovered her activities, and dates when police searched for her. This petition for review followed.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). To the extent that the BIA deferred to the IJ's credibility findings, we will review the IJ's decision as supplemented by the BIA. *See Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir.2004). Credibility determinations are reviewed under the substantial evidence standard. *See id.* at 243. Adverse credibility determinations based on speculation or conjecture, rather than on record evidence, are reversible. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002). Zheng's asylum application was filed after May 11, 2005, and thus the provisions of the REAL ID Act apply. *See Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir.2007). Under the REAL ID Act, an adverse credibility determination can be based on inconsistencies, inherent implausibilities, inaccuracies, and other factors, without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). The Court must uphold the credibility determination of the BIA unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Zheng tacitly challenges the applicability of the REAL ID Act provision regarding credibility determinations, contending that the agency's adverse credibility determination rests upon minor and irrelevant discrepancies. We need not consider the effects of the new provisions, however, because we conclude that substantial evidence supports the adverse credibility determination on matters that concern the heart of Zheng's claim. For example, the BIA noted Zheng's unpersuasive testimony regarding the dates the police searched for her—an issue which Zheng concedes is a material issue to her asylum claim. *See* Petr's Br. at 14. Her initial testimony indicating a January 2005 date was inconsistent with her changed testimony and her written statement indicating a May 2005 date. This date discrepancy concerns an event that was purportedly pivotal in Zheng's decision to flee to the United States. We agree with the BIA's conclusion that Zheng's explanations at the hearing were inadequate to resolve the inconsistencies. We conclude that the record contains substantial evidence to support the adverse credibility finding and does not compel a contrary finding.[1]

We discern no reason to disturb the agency's denial of asylum and withholding of removal. Zheng presents no argument regarding her claim for protection under the CAT. We deem any challenge to the denial of CAT relief to be waived and will not address it. *See Lie v. Ashcroft*, 396 F.3d 530, 532 n. 1 (3d Cir.2005).

We will deny the petition for review. The government's motion to proceed on the administrative record is granted.

---

1. Because substantial evidence supports the adverse credibility finding, we need not reach Zheng's arguments relating to her eligibility for asylum relief.